[Cite as *Gowda v. State Med. Bd.*, 2026-Ohio-2837.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State Medical Board of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 25AP-708 |
| v. | : | (C.P.C. No. 24CV-9709) |
| Chandre C. Gowda, M.D., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 23, 2026

**On brief:** [*Andy Wilson*], Attorney General, *Katherine J. Bockbrader*, and *D. Grant Wilson*, for appellee. **Argued:** *Katherine J. Bockbrader*.

**On brief:** *Todd W. Newkirk*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1} Defendant-appellant, Chandre C. Gowda, M.D., appeals the decision and entry of the Franklin County Court of Common Pleas which affirmed the decision of plaintiff-appellee, State Medical Board of Ohio ("Board"), which permanently revoked Dr. Gowda's medical license and imposed an $18,000 fine. For the following reasons, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On January 10, 2024, the Board sent a notice of opportunity for hearing letter to Dr. Gowda, notifying him that the Board intended to determine whether it would limit, revoke, permanently revoke, or suspend his license to practice medicine and surgery. The letter stated:

> On multiple occasions between on or about April 14, 2016 and on or about June 2, 2021, you falsely certified that you were the treating physician on a United States Citizenship and

> Immigration Services Medical Certification of Disability Exceptions Form [Form N-648]. Form 648 is a medical certification for people with disabilities seeking waiver of the requirement to sit for exam in order to be granted citizenship. You had no medical records for at least ten of the people you certified were patients with disabilities lasting at least one year.

(Feb. 3, 2025 Record of Proceedings, State's Ex. 1a at 1.)

{¶ 3} The letter further stated that these actions constituted making a "false, fraudulent, deceptive, or misleading statement" in relation to the practice of medicine, as used in R.C. 4731.22(B)(5), which could subject Dr. Gowda to a civil penalty in addition to possible license limitation, revocation, or suspension. Finally, the letter notified Dr. Gowda that, under Chapter 119 of the Revised Code, he could request a hearing where he may appear, with or without counsel, to offer evidence, examine witnesses, and present his arguments.

{¶ 4} On January 31, 2024, Dr. Gowda, through counsel, requested a hearing regarding the notice of opportunity for hearing letter. On November 20, 2024, a Board Hearing Examiner issued a report and recommendation. The report stated that Dr. Gowda immigrated from India, where he earned a medical degree, to the United States in 1984. Dr. Gowda practiced family medicine, and his most recent practice was for an "underserved area" where many of his patients are refugees who do not speak English. (Nov. 20, 2024 Report & Recommendation at 3.) The report stated that in 2010 or 2011, Dr. Gowda met Inna Simakovsky, an immigration attorney, and he began an arrangement where he would send his patients who were experiencing immigration issues to Simakovsky. The report specified that

> [b]etween April 2016 and June 2021, Dr. Gowda signed the federal Form N-648 Medical Certification for Disability Exceptions for multiple people who sought exemptions from the citizenship exam, based on a disabling medical condition or conditions. . . .
>
> On the forms, Dr. Gowda certified that each applicant had a disability or impairment lasting more than one year that was the basis for seeking an exemption to the English and civics material that an applicant would ordinarily be tested on.
>
> . . .

Dr. Gowda then attested on each patient's form that the disability prevented the patient from demonstrating the ability to read, write, and speak English, and to answer questions about United States history and civics, even if they were asked in a language the applicant understands.

. . .

Dr. Gowda certified that all of the information provided was true and agreed to furnish relevant medical records to the United States Customs and Immigration Service ("USCIS") upon request.

*Id.* at 6-7.

{¶ 5} The report stated that

[a]lthough Dr. Gowda testified that Ms. Simakovsky was filling out his patients' N-648 forms to certify a medical disability, he conceded that she had no medical training, and that she was "strictly an immigration attorney." Tr. at 83. Dr. Gowda confirmed that, after he signed the forms, he mailed them back to Ms. Simakovsky, who submitted them[.]

*Id.* at 6.

{¶ 6} Dr. Gowda testified that over the ten-to-eleven-year period that he maintained this arrangement with Simakovsky, a few hundred of his patients were also her clients. In December 2021 or January 2022, Dr. Gowda noted that federal agents from the Immigration and Naturalization Service visited his office, presented some of the N-648 forms he had signed, and asked to see the supporting medical records. Dr. Gowda testified that this was the first time he realized the forms contained information not supported by his records.

{¶ 7} The report also found that

[i]n response to the Board's subpoena requesting records for . . . patients, Dr. Gowda initially asserted that he had no medical records for at least ten of the people he certified were patients with disabilities lasting at least one year. By the time of the hearing, he was able to present sparse records for 10 of the 11 patients whose records were subpoenaed, but he had no records to show that he was the treating physician for the patient whose N-648 form appears at Exhibit 2.G, and his records for many of the other patients do not show that he was the professional who regularly treated those patients for the listed conditions of disability and/or impairment, or that he even regularly treated the patients for any condition.

*Id*. At 24.

{¶ 8}   Ultimately, the hearing examiner proposed that Dr. Gowda's license be permanently revoked and that Dr. Gowda be fined $18,000.

> Taken together, the evidence shows that Dr. Gowda's relationship as the "regular treating physician" of these patients for their disabling conditions was not a true and genuine one. The fact that Dr. Gowda was unsure whether or not these were even his patients further supports the conclusion that he had a very limited relationship with them.
>
> The circumstances surrounding Dr. Gowda's relationship with Ms. Simakovsky, and his admission that they had "a few hundred" patients and clients in common suggests a fraudulent arrangement between the two of them, even though Dr. Gowda submits that he got no additional compensation for his role in signing the forms and there is no evidence of such an arrangement.

*Id*. At 26.

{¶ 9}   On December 11, 2024, the Board held a hearing and voted to permanently revoke Dr. Gowda's license to practice medicine and surgery in the state of Ohio and to impose a fine of $18,000.

{¶ 10}   Pursuant to R.C. 119.12, Dr. Gowda appealed the Board's decision to the Franklin County Court of Common Pleas.  On August 6, 2025, the trial court affirmed the decision of the Board.  The trial court rejected Dr. Gowda's arguments that the revocation of his medical license was disproportionate to his lack of intent and prior disciplinary history.  The trial court found that, contrary to Dr. Gowda's claims, he was not deprived of a remedy afforded by the Ohio Constitution, and that he had a full and fair due process hearing.  The trial court noted that the Board imposed a sanction that was authorized by law, and that a reviewing court should not "arbitrarily substitute its judgment as to an appropriate penalty for that of the Board." (Aug. 6, 2025 Decision & Entry Affirming the Decision of the State Med. Bd. of Ohio at 5.), citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984).

{¶ 11}   Nevertheless, the trial court rejected the Board's contention, based on *Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), that a court cannot alter a penalty imposed by an administrative agency.  The trial court called this precedent into question, given more recent cases such as *TWISM Ents., L.L.C. v. State Bd. of*

*Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, which held that courts should not defer to an administrative agency on questions of law. However, in this particular case, the trial court determined that the Board did not abuse its discretion, as its decision was supported by substantial, reliable, and probative evidence.

{¶ 12} Dr. Gowda now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Dr. Gowda argues the following assignments of error:

[1.] The Board's findings that Dr. Gowda intentionally falsified N-648 forms, and the trial court's affirmance, are not supported by reliable, probative, and substantial evidence under R.C. 119.12 where (1) the record contains no expert testimony or objective benchmark establishing inadequacy of the evaluations or documentation required for N-648 certifications, (2) the undisputed evidence shows at most documentation deficiencies and delegation to a referring attorney—not knowing falsity, (3) all mitigating factors weigh against an inference of intent, and (4) permanent revocation and a substantial fine rest on speculative inferences rather than competent proof of dishonesty within the meaning of R.C. 4731.22(B)(5).

[2.] The State Medical Board abused its discretion under OAC 4731-13-36 and violated Ohio's due course of law guarantee by imposing permanent revocation and an $18,000 fine for approximately ten N-648 matters over five years without expert evidence of clinical inadequacy, without patient harm, and despite substantial mitigation; the sanction is grossly disproportionate to the proven conduct under R.C. 4731.22(B)(5).

[3.] The Board's revocation order is not supported by reliable, probative, and substantial evidence and is not in accordance with law because the agency adjudicated alleged falsification of N-648 disability certifications without (1) expert evidence or articulated professional standards governing such evaluations, (2) fair notice of what conduct was prohibited, or (3) proof of intent under R.C. 4731.22(B)(5). By substituting conclusory inferences about "inadequate documentation" for competent evidence of professional standards, the Board denied Dr. Gowda due process guaranteed by Ohio Const. Art. I, § 16 and the statutory requirements of R.C. 119.12.

[4.] The Board's imposition of permanent revocation and an $18,000 fine—without a reasoned, on-the-record application of Ohio Admin. Code 4731-13-36 to the undisputed

mitigating factors of no prior discipline, cooperation, no patient harm, and no financial motive—violates due process under Ohio Const. Art. I, § 16 because it is arbitrary, capricious, and grossly disproportionate.

## III. DISCUSSION

{¶ 14} When reviewing an order of the Board, a trial court must consider the record to determine whether reliable, probative, and substantial evidence supports the Board's order and whether the order is in accordance with law. R.C. 119.12(M). *See also Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108 (1980). If the trial court makes such a finding, it is "precluded from interfering or modifying the penalty which the [Board] imposed, so long as such penalty is authorized by law." *DeBlanco v. Ohio State Med. Bd.*, 78 Ohio App.3d 194, 202 (1992). An appellate court's review of an administrative decision is even more limited, and we must determine only if the trial court abused its discretion, and absent such an abuse, we must affirm and not substitute our judgment for those of the Board or the trial court. *Banker v. State Med. Bd.,* 2024-Ohio-6009 (10th Dist.).

### A. Assignments of Error Nos. 1 and 3

{¶ 15} In his first and third assignments of error, Dr. Gowda argues that the Board's decision was not supported by reliable, probative, and substantial evidence under R.C. 119.12. Specifically, Dr. Gowda argues that the Board did not show that there was an intent to falsify under R.C. 4731.22.

{¶ 16} We first turn to the statute. R.C. 4731.22(B) states that the Board, by an affirmative vote of its members,

> shall, to the extent permitted by law, limit, revoke, or suspend a license or certificate to practice or certificate to recommend, refuse to issue a license or certificate, refuse to renew a license or certificate, refuse to reinstate a license or certificate, or reprimand or place on probation the holder of a license or certificate for one or more of the following reasons:
>
> . . .
>
> (5) Making a false, fraudulent, deceptive, or misleading statement in the solicitation of or advertising for patients; in relation to the practice of medicine and surgery, osteopathic medicine and surgery, podiatric medicine and surgery, or a limited branch of medicine; or in securing or attempting to secure any license or certificate to practice issued by the board.

> As used in this division, "false, fraudulent, deceptive, or misleading statement" means a statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived.

R.C. 4731.22(B)(5).

{¶ 17} Dr. Gowda argues that the Board did not show that he intended to make a false, fraudulent, deceptive, or misleading statement when signing the N-648 forms. Dr. Gowda states that he did not realize the completed forms contained false information until his office was raided and that he told the Board he did not intend to make false, fraudulent, deceptive, or misleading statements. While Dr. Gowda argues the Board did not show that he intended to make a false statement, this court has noted that "[d]irect evidence of intent is not necessary because intent may be inferred from the surrounding circumstances." *Mansour v. State Med. Bd. of Ohio*, 2018-Ohio-2605, ¶ 19 (10th Dist.). The Board, as finder of fact, may believe all, part, or none of a witness's testimony, including a doctor's testimony "den[ying] any intent to deceive." *Mansour* v. *State Med. Bd. of Ohio*, 2015-Ohio-1716, ¶ 27 (10th Dist.); *D'Souza v. State Med. Bd. of Ohio*, 2009-Ohio-6901, ¶ 17 (10th Dist.).

{¶ 18} The trial court noted that the Board Hearing Examiner was "free to believe, or disbelieve, [Dr. Gowda]'s testimony[,]" and "was in the best position to determine his credibility. The Hearing [Examiner]'s findings that [Dr. Gowda] fraudulently and intentionally falsified the immigration forms was supported by [Dr. Gowda]'s own testimony, patients' charts, and the direct and circumstantial evidence establishing intent and fraud." (Aug. 2025 Decision & Entry Affirming the Decision of the State Med. Bd. of Ohio at 3.) We agree with the trial court and find no abuse of discretion by the trial court here. The surrounding circumstances show a strong indication that Dr. Gowda repeatedly signed N-648 forms that were not accurate and were not supported by his own insufficient medical documentation.

{¶ 19} Dr. Gowda also argues that he was denied a fair process and his due process rights were violated, as there was no identifiable standard with regard to his violations. He argues that without expert evidence or other evidence of objective standards in the record

by which to measure his conduct, the Board's decision was speculative and not supported by reliable, probative, and substantial evidence. We are not persuaded. The violations at issue here did not depend on finding a deviation from a medical standard of care. Instead, Dr. Gowda's violations involved falsifying medical information on government forms, namely, that the information he provided in submitting the N-648 form and the evidence corroborating the information contained within the N-648 form were all true and correct.

{¶ 20} There is no objective standard that would offer any tolerance for a doctor falsifying medical information. The Board's finding that Dr. Gowda fraudulently and intentionally falsified the N-648 forms is supported by Dr. Gowda's own testimony, as he acknowledged that he did not have adequate records for patients or, in the case of one patient for whom he signed the N-648 immigration form, *any* records. This was necessary documentation that he claimed to have compiled and reviewed before signing the N-648 immigration forms, but he simply did not.

{¶ 21} Accordingly, we find the trial court did not abuse its discretion in upholding the Board's decision, nor will we substitute our own judgment for the Board's credibility determinations. We therefore overrule Dr. Gowda's first and third assignments of error.

## B. Assignments of Error Nos. 2 and 4

{¶ 22} In Dr. Gowda's second and fourth assignments of error, he argues that the sanctions imposed by the Board are not proportionate to the violations, and that the Board did not take into account mitigating circumstances.

{¶ 23} We note that we are limited in our review of sanctions imposed by the Board. R.C. 119.12(N) states that a reviewing court

> may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 24} The state points us to *Henry's Café, Inc.*, 170 Ohio St. at 236, which held that a reviewing court "may reverse, vacate or modify an order of an agency unless it finds that the order is supported by reliable, probative and substantial evidence, but, where it makes

such a finding, it can only affirm and cannot reverse, vacate or modify." In other words, if an agency decision is supported by reliable, probative, and substantial evidence, a reviewing court cannot disturb a sanction.

{¶ 25} The trial court, while affirming the sanctions imposed by the Board, expressed skepticism that it was powerless to modify a sanction. We are similarly dubious of the continuing validity of *Henry's Café*. It is worthwhile to consider that the Supreme Court of Ohio has rejected the contention that courts must defer to administrative agencies' interpretations of the law. *See TWISM, Ents., L.L.C.*, 2022-Ohio-4677; *State ex rel. Hildreth v. Larose*, 2023-Ohio-3667; *In re Firelands Wind, L.L.C.*, 2023-Ohio-2555; *In re Alamo Solar I, L.L.C.*, 2023-Ohio-3778. Although the state argues here that a reviewing court would be wholly unable to modify an agency's sanction, which R.C. 119.12 states must be "in accordance with law," the Supreme Court has stated legal interpretations are the province of the judiciary, not administrative agencies, and are subject to de novo review.

{¶ 26} Nevertheless, in its decision, the trial court noted that it "may have imposed a lesser penalty than the permanent revocation of [Dr. Gowda]'s license, but it is reluctant to rule otherwise." (Aug. 6, 2025 Decision & Entry Affirming the Decision of the State Med. Bd. of Ohio at 6.) We cannot now find legal error regarding the sanction imposed by the Board and affirmed by the trial court. There is no question that permanent revocation is an available sanction in R.C. 4731.22. The N-648 forms that Dr. Gowda signed also stated that he was aware that the knowing placement of false information and related documents on the form could subject him to criminal penalties and civil license suspension. Further, R.C. 4731.225(B)(2) allows the Board to impose a fine of no more than $20,000. The sanctions imposed on Dr. Gowda are within the bounds of the statute. We also note that the Board's minutes show that Board members engaged in a thorough discussion about the appropriate sanction, including consideration of potential mitigating factors such as Dr. Gowda's remorse and his contention that he did not intend to falsify the documents. On the other hand, the Board also discussed the potential harm to Dr. Gowda's patients from his lack of sufficient documentation, the lengthy period of time in which Dr. Gowda was engaged in this arrangement, the number of patients in common with Ms. Simakovsky, as well as the perpetration of fraud against the federal government as particularly egregious.

{¶ 27} Because the sanctions imposed are within the bounds of R.C. 4731.22 and are supported by reliable, probative, and substantial evidence in the record, we overrule Dr. Gowda's second and fourth assignments of error.

## IV. CONCLUSION

{¶ 28} Having overruled all four of Dr. Gowda's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and LELAND, JJ., concur.